UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| OSF Healthcare System, | ) | |
|         Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 10-1400 |
| | ) | |
| Amanda Weatherford and Boilermakers | ) | |
| National Health & Welfare Fund, | ) | |
|         Defendant | ) | |

## ORDER and OPINION

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court is the motion for summary judgment (#15) filed by Defendant Boilermakers National Health & Welfare Fund. The motion is fully briefed, and I have carefully considered the arguments and evidence of the parties. For the reasons stated herein, the motion is GRANTED.

## JURISDICTION AND VENUE

This lawsuit was filed by OSF in the Circuit Court of the Tenth Judicial Circuit, Peoria County, Illinois, alleging that the Fund's refusal to pay a bill for medical services and supplies rendered by OSF to the child of Fund participant Travis Weatherford was a violation of ERISA (Count I), and that Amanda and Travis Weatherford's failure to pay the OSF bill was a breach of contract (Counts II and III), a violation of the Illinois Family Expense Act (Counts IV and V), and breach of an implied contract (Counts VI and VII). It was removed by Defendant on the grounds of ERISA preemption. The three Counts against Travis Weatherford were voluntarily dismissed; see Motion #9 and Order #10.

1

This Court has jurisdiction over the ERISA claims pursuant to 29 U.S.C. 1132(e)(1), which accords concurrent jurisdiction of civil actions to the district courts of the United States and to State courts of competent jurisdiction for actions, such as this one, brought under subsection (a)(1)(B).

The state law claims are properly before this court under its supplemental jurisdiction, 28 U.S.C. 1367(a), because this Court has original jurisdiction over the dispute, and the state claims are so related to the federal claims that they form part of the same case or controversy. All claims relate to a bill for medical services rendered by OSF to the child of the Weatherfords.

Venue is proper pursuant to 29 U.S.C. 1132(e)(2), because the alleged statutory violation took place in Peoria County, Illinois, within the Peoria Division of the Central District of Illinois.

**SUMMARY JUDGMENT GENERALLY**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

**STATEMENT OF FACTS**

When the motion for summary judgment was first briefed, it became apparent that there were uncertainties about which documents were the governing Plan documents at the time services were rendered. The parties were ordered to take the deposition of Karen Wilson[1] and, if possible, to stipulate to the governing documents and the pertinent provisions thereof. This has been done. In addition, supplemental briefs were allowed as to the effect of that deposition on the arguments previously made. Those briefs have also been filed. The facts stated below include the relevant information from the stipulation and supplemental briefs, as well as the initially-stated facts and arguments that were not mooted by the supplemental briefing.

Boilermakers National Health and Welfare Fund ("the Fund") provided medical benefits to Eligible Individuals. The Fund was established by a written Agreement and Declaration of Trust. The Declaration of Trust does not spell out the benefits to which participants and beneficiaries are entitled. Those benefits are established under and governed by a written plan ("the Plan") titled "Boilermakers National Health and Welfare Fund Plan Document for Active Boilermakers Covered Under Plan G and Reduced Plan G." A copy of the Plan is attached to the parties Stipulation.

The parties agree that as of January 6, 2010, the Plan included a crucial provision, which governed the entire Plan; it was not limited to any one benefit. This provision[2] provides as follows:

Section 12.02 **No Alienation or Assignment of Benefits.**

---

[1] Wilson has, since July of 2009, served as the Operations Manager of the Boilermakers National Health and Welfare Fund ("Fund"). In that position, she is involved in overseeing the operations and day-to-day business of the Fund, and is familiar with the structure of the Fund.

[2] Effective Jan.10, 2010, this provision was re-numbered as Section 17.02. No changes were made to the provision itself.

Benefits payable hereunder shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any person. The Fund may, at its discretion, pay benefits directly to an institution in which an Eligible Individual has been admitted as inpatient or to any provider of medical or dental services or supplies in consideration for medical, hospital or dental services or supplies rendered or to be rendered, regardless of the presence or absence of an assignment of benefits or other form of benefit directive. The Fund may also, at its discretion, pay benefit claims directly to an Eligible Individual, regardless of any purported benefit assignment. When benefits are paid to an Eligible Individual, the Eligible Individual is responsible for reimbursing the provider. Payment as described above will release the Fund from all liability for all related charges for the services or supplies rendered or to be rendered.

No Eligible Individual may assign to a provider his or her right to file an appeal under the Plan's claims and appeal procedure or to file a suit for benefits under Section 502 of ERISA. As the sole exception to this prohibition, an Eligible Individual may assign his right to appeal to a provider if the appeal involves an urgent care claim.

Under the Plan, medical providers are considered either "In-Network" providers or "Out-of-Network" providers, depending on whether they have entered into provider pricing agreements with CIGNA, the Fund's Preferred Provider Organization ("PPO"). Claims for benefits are submitted to CIGNA. In-Network claims remain for handling by CIGNA, based on the relevant provider pricing agreement.

CIGNA forwards all Out-of-Network claims to the Fund for processing. Someone from the Fund then contacts the provider to see if a pricing agreement can be negotiated. If it can and if there is an assignment of benefits[3], then payment based on that negotiated agreement is sent directly to the provider.

If negotiations fail to result in a pricing agreement for an Out of Network claim, the Fund would then determine the "reasonable and customary" amount of the services rendered, multiply that

---

[3] If there was no assignment, Wilson testified that the Fund would use its discretion to determine whether to pay the provider or the participant, although she could not recall that ever happening.

amount by the percentage allowed for those services under the terms of the Plan, and send payment. If the payment was for less than $5000, the payment would be sent directly to the provider. If it exceeded $5000, the payment would be sent directly to the Plan participant, who would then be responsible for paying the provider's bill.

Plaintiff OSF Healthcare Systems Inc. ("OSF") is an Out-of-Network provider. In Wilson's affidavit (Doc.16-1, ¶9), she states that, prior to the date of services in this case, the Fund had on numerous occasions attempted to negotiate with OSF for pricing agreements but with no success.

On January 5, 2010, the minor child of Amanda and Travis Weatherford received medical services and supplies from OSF. Amanda Weatherford signed a document titled "Assignment/Release/Agreement to Pay" presented to her by OSF at the time services were rendered. In pertinent part, this document states: "The Undersigned hereby irrevocably assign to Hospital any and all rights which they have against any insurance company or other third party payor for payment of the Patient's bill to Hospital." (See Amended Exh. B[4], Doc. #23).

At the time services were rendered, Travis Weatherford was a participant in the Plan, and his wife and child were eligible beneficiaries under the Plan. A claim for $13,390.30 was submitted on January 6, 2010, for the services rendered and supplies provided to the child. Because of the Fund's past lack of success in negotiating with OSF for a pricing agreement, no efforts were made on this occasion to negotiate a pricing agreement with OSF. Using its normal procedures, the Fund determined that the reasonable and customary amount for the services rendered was $8,123.00. Pursuant to the Plan, the participant was entitled to 85% of this amount, or $6,904.55.

---

[4]This Amended Exhibit B replaces Exhibit B to the Complaint, which was entirely unreadable.

A check for $6,904.55 was issued and sent to Travis Weatherford on May 18, 2010. The check was accompanied by the Plan's Explanation of Benefits ("EOB"). The EOB included the following language:

> The participant may appeal a denial of benefits within 180 days by written request to the address provided, or by telephone for urgent care claims. Urgent care claim determinations will be made within 72 hours. All other appeal determinations will be issued no later than 5 days after the quarterly Appeals Committee meeting, unless the participant receives a notice of extension. The participant has the right to bring a civil action under ERISA § 502(a) if the request for benefits is denied on review.

Travis Weatherford died in May of 2010. The check issued by the Plan has never been cashed. As of the date this lawsuit was filed, OSF had received no other payments on this account from any source.

On July 12, 2010, the Fund received from the law firm of Koth & Gregory a letter titled "Appeal & Request for Plan Documents." This letter, written on behalf of the firm's client OSF, summarized the history of efforts to obtain payment on the claim and then stated OSF's request for copies of the Summary Plan Description and any documents containing information about the appeal process. The letter concluded: "This appeal is being made on behalf of the hospital as a beneficiary based on an Assignment of Benefits."

In response to the law firm's letter, the Plan sent what it characterizes as a "standard letter." This letter reads in full:

> The Boilermakers National Health and Welfare Fund received your letter appealing the Fund's adverse benefit determination for services provided to a Fund participant or beneficiary. Please be advised that effective March 1, 2008, the Plan was amended to prohibit a participant or beneficiary from assigning to a service provider his or her right to file an appeal under the Plan's claim and appeal procedure or to file a suit for benefits under ERISA.
>
> While participants and their non-provider authorized representative continue to have the right to invoke the Health and Welfare Fund's appeal procedure - and, in fact, must exhaust

6

the Plan's appeal procedure before filing a lawsuit - the appeal procedure is no longer available to service providers. As a result, the "appeal" you sent to the Fund Office will not be presented to the Board of Trustees or further processed in any way.

This lawsuit was then filed by OSF. The Fund has moved for summary judgment on the ERISA Count against it, raising the sole issue of whether OSF may recover benefits from the Fund or whether it is precluded from doing so by the anti-assignment provision of the Plan document. OSF has responded that the anti-assignment provision does not preclude it from recovering benefits because under the terms of the Plan OSF is a beneficiary.

**DISCUSSION**

ERISA prohibits assignment of *pension* benefits, 29 U.S.C. 1056(d)(1), but is silent as to whether *welfare* benefits can be assigned. In Mackey v. Lanier Collection Agency & Svc., Inc., 486 U.S. 825, 837 (1988), the Supreme Court held that, because ERISA contains no anti-assignment provision for welfare plans, the statute does not prohibit a state from garnishing welfare benefits payable to a participants by a plan.

The Seventh Circuit has interpreted Mackey and the statutory silence as meaning that "claims for welfare benefits ... are assignable, provided of course that the ERISA plan itself permits assignment, assignability being a matter of freedom of contract in the absence of a statutory bar." Morlan v. Universal Guaranty Life Ins. Co., 298 F.3d 609, 615 (7th Cir. 2002)[5], citing Mackey, supra, and Kennedy v. Connecticut General Life Ins. Co., 924 F.2d 698, 700 (7th Cir. 1991). Accord,

---

[5] Morlan also discussed the few cases that have found welfare benefits to be un-assignable, noting that even these cases have carved out an exception for "medical benefits assigned to a health care provider in exchange for health care, a common method of financing such care." 298 F.3d 609 at 615, citing Principal Mutual Life Ins. Co. v. Charter Barclay Hospital inc., 81 F.3d 53, 55-57 (7th Cir. 1996).

Neurological Resources v. Anthem Ins. Cos., 61 F.Supp. 2d 840, 846 (S.D.Ind. 1999)(assignments must comply strictly with the terms of the plan); Physicians MultiSpecialty Group v. Health Care Plan of Horton Homes, Inc. 371 F.3d 1291, 1295-96 (11th Cir. 2004)(enforcing anti-alienation provision in plan and refusing to enforce participants assignment of benefits and citing cases); City of Hope Nat'l Med. Ctr. v. Healthplus Inc., 156 F.3d 223, 229 (1st Cir. 1998)(provider not able to recover benefits as assignee, given plan's anti-assignment provision); Davidowitz v. Delta Dental Plank 946 F.2d 1476, 1477 n.2 (9th Cir. 1991)(plan benefits not assignable where plan contained provision prohibiting assignment); Washignton Hosp. Center Corp. v. Group Hosp. & Med.Svcs., Inc., 758 F. Supp. 750, 752 (D.D.C. 1991)(enforcing language of plan allowing plan to "refuse to honor" assignment of claim).

So the issue presented must be decided by the language of the Plan. In this case, Section 12.02 (quoted above) is the pertinent provision. The first paragraph of this Section deals with the assignability of "benefits payable hereunder," while the second paragraph prohibits assignment to a provider of the right to file an appeal under the Plan's claims and appeals procedures[6].

There are two important aspects to the first paragraph. The first is that there are no stated exceptions to the prohibition against assignment of benefits. The second is that the Fund is given discretion whether (1) to pay benefits directly to "an institution in which an Eligible Individual has been admitted as an inpatient or to any provider of medical ... services or supplies ... regardless of the presence or absence of an assignment of benefit directive" or (2) to pay benefits "directly to an eligible Individual, regardless of any purported benefit assignment."

---

[6] The second paragraph includes a single exception: the right to appeal may be assigned to a provider "if the appeal involves an urgent care claim." This exception is required by Department of Labor regulation. 29 C.F.R. 2560.503-1(b). Plaintiff's argument that inclusion of this language somehow supports its claim is without merit.

Plaintiff first asserts that it falls within ERISA's definition of "beneficiary." The statutory definition of a "beneficiary" is a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. §1002(8). As a general rule, the Seventh Circuit has held that an assignee is a beneficiary under ERISA for statutory standing purposes. T. J. Kennedy v. Connecticut General Life Ins. Co., 924 F.2d 698, 700-01 (7th Cir. 1991).

Despite that general rule, there are some factual distinctions here that call into question whether the general rule applies, namely, is OSF a beneficiary. While there are certainly medical providers that fall within the ERISA definition of beneficiary due to an assignment, OSF is not one of them. As Wilson described the Fund's procedures, checks in excess of $5000 for Out of Network services are paid to participants unless there is a pricing agreement in place. OSF has submitted no evidence that it had such an agreement or that it would have acted contrary to its past (uncontroverted) practice of refusing to negotiate such agreements. That the Fund made no effort to negotiate in this case merely means that it did not perform a futile act. The evidence of record in this case establishes that OSF is not a person who is or may become entitled to a benefit under this Plan and hence is not a beneficiary entitled to sue directly under ERISA.

Kennedy also emphasizes, however, that such an assignee/beneficiary "cannot *collect* unless he establishes that the assignment comports with the plan." Id. at 700. In this case, OSF cannot show that the assignment comports with the plan. The language in the Plan is unambiguous: "Benefits payable hereunder shall not be subject *in any manner* to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge *by any person*." Section 12.02 [emphasis added].

According to OSF, the fact that the Fund has discretion to pay a provider directly creates an ambiguity: if the benefits payable were truly non-assignable, the Fund would have no discretion to pay anyone other than the participant. No authority is cited for this proposition, and I disagree with the logic of the statement. The fact that the Fund retained discretion to determine whether to pay the participant or a provider has nothing to do with whether a participant or beneficiary can assign its rights under the terms of the Plan. Similarly, the Fund's exercise of its discretion is in no way dependent on the existence of an assignment or the lack thereof, although it is well within its discretion for the Fund to consider the existence of an assignment (or lack thereof) is one factor in deciding who receives the actual payment. The retention of discretion creates no ambiguity.

## CONCLUSION

Either because OSF is not a beneficiary as that word is defined by ERISA or because this action is barred by the anti-assignment provision in the Plan, the claim against the Fund fails. The motion for summary judgment is GRANTED as to Count I. Boilermakers National Health & Welfare Fund is terminated as a defendant.

This case is set for a telephone status conference on Thursday, April 12, 2012 at 10:30 a.m. (Court will set up the call). At that conference, the parties are to be prepared to discuss the question whether this Court should retain jurisdiction of the remaining state law claims and then address the issue of the uncashed check that was previously issued to Travis Weatherford.

ENTERED ON March 23, 2012

                                                        s/ John A. Gorman

                                        JOHN A. GORMAN
                                        UNITED STATES MAGISTRATE JUDGE